IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| JB & HM Enterprises, Inc. | ) | Case No.: 4:19-CV-00107-JD |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| City of Myrtle Beach, South Carolina, | ) | ORDER |
| | ) | |
| Defendant. | ) | |
| | ) | |
| Danny Group, LLC, Blazian Promotions & Company, LLC, and Hector Melendez, | ) | Case No.: 4:19-CV-02087-JD |
| | ) | |
| vs. | ) | |
| | ) | |
| City of Myrtle Beach, South Carolina and John Pederson, | ) | |
| | ) | |
| Defendants. | ) | |

In this consolidated case[1] after a jury trial that concluded in defense-directed verdicts,

Plaintiffs JB&HM Enterprises, Inc. ("JB&HM") (DE 142) and Danny Group, LLC ("Danny

Group"), Blazian Promotions & Company, LLC ("Blazian"), and Hector Melendez's

("Melendez") (DE 134) (collectively "Plaintiffs") filed Motions to Reconsider the Court's grant

of directed verdicts. Plaintiffs ask this Court to reconsider its orders granting Defendant City of

Myrtle Beach, South Carolina (JB&HM Case), and City of Myrtle Beach, South Carolina, and

---

[1]      This matter was consolidated by consent motion of the parties with Case No. 4:19-cv-00107-JD ("JB&HM Case") being designated as the lead case in this matter. (DE 113.) These cases were originally filed in state court and thereafter removed to federal court. (DE 1.) Plaintiffs filed a Motion to Reconsider at DE 142 in Case No.: 4:19-CV-00107-JD and at DE 134 in Case No.: 4:19-CV-02087-JD ("Danny Group Case"); however, the motions track each other in form and substance, and therefore, the Court issues this Order to be filed in both cases.

John Pederson's (Danny Group Case) (collectively "Defendants") directed verdicts. For the reasons set forth below, the motions are denied.

## BACKGROUND

These consolidated cases arise out of disputes between minority business and property owners in the City of Myrtle Beach, South Carolina, with the City of Myrtle Beach and John Pederson ("Pederson"), the City Manager. Plaintiffs owned and operated businesses in the area known as the "Superblock" in the City of Myrtle Beach. The Superblock is bound by Broadway Street to the North, Highway 501 to the South, North Oak Street and 8th Avenue to the West, and 9th Avenue and North Kings Highway to the East. Plaintiff Danny Group, whose members are of middle eastern descent, operated the Ibiza Club and Hooka Lounge located at 810 North Oak Street, Myrtle Beach, South Carolina. Plaintiff Blazian, whose sole member is African American and Filipino, operated Natalia's Bar & Grill. Plaintiff JB&HM, whose principal James Brady is gay, owns buildings 803 and 805 Main Street, where Plaintiff Hector Melendez, who is Latino, was the sole member of Pure Ultra Club, LLC ("Pure Ultra"), which was a bar and lounge that leased property from JB&HM.[2] Danny Group, Blazian, and Pure Ultra originally applied for and obtained business licenses from Defendant City of Myrtle Beach with full disclosure that the businesses would be selling alcohol. Thereafter, Plaintiffs allege among other things that Defendants City of Myrtle Beach and John Pederson harassed the businesses because they were minority-owned businesses to eliminate them so that the City of Myrtle Beach could acquire the properties.

In the JB&HM Case, JB&HM's suit alleges the following causes action: 1) "Tortious Interference of Contract and Action under United States Code, Section 1983", 2) "Violation of

---

[2]     Although Melendez was a party to this suit, Pure Ultra Club, LLC, is not a plaintiff.

Section 1983 United States Code of Law", 3) Breach of Contract, and 4) Civil Conspiracy.[3] (DE 1-1.) Likewise, in the Danny Group Case they allege 1) Tortious Interference of Contract, 2) Unconstitutional Taking under the South Carolina Constitution, 3) Violation of 42 U.S.C. §1983 – Unconstitutional Taking, 4) Violation of 42 U.S.C. §1983 – Lack of Due Process, and 5) Violation of 42 U.S.C. §1985(3) – Civil Conspiracy to Hinder Constitutional Rights. (DE 1-1.)

After the Plaintiffs concluded their case, Defendants City of Myrtle Beach and John Pederson moved for a directed verdict on Plaintiffs Danny Group, Blazian, and Melendez's claims for Tortious Interference of Contract, Unconstitutional Taking, Violation of their Due Process, and Civil Conspiracy under § 1985. During oral arguments on the motion, the Danny Group Case Plaintiffs withdrew their tortious interference claims for Blazian and Danny Group. The Court found, after reviewing the evidence in the record and drawing all reasonable inferences in favor of the Danny Group Case Plaintiffs, that Defendants' motion should be granted except for civil conspiracy under § 1985. First, as to Melendez's tortious interference with a contract claim, the Court held that the elements for this claim are: 1) the existence of a contract; 2) knowledge of the contract; 3) intentional procurement of its breach; 4) the absence of justification; and 5) resulting damages. See Sunrise Corp. of Myrtle Beach v. City of Myrtle Beach, 420 F.3d 322 (4th Cir. 2005).

> An essential element to the cause of action for tortious interference with contractual relations requires the intentional procurement of the contract's breach. Where there is no breach of the contract, there can be no recovery.

---

[3]    JB&HM's Breach of Contract claim was dismissed at summary judgment (DE 81). In addition, according to JB&HM its "Violation of Section 1983 United States Code of Law" claim is derived from the "first ten amendments of the United States Constitution". (DE 1-1, ¶ 75.)

See Eldecop, Inc. v. Charleston Cnty. Sch. Dist., 372 S.C. 470, 481–82, 642 S.E.2d 726, 732 (2007) (internal citation omitted).  The Court held there was no contract between Melendez and JB&HM that could have been breached; therefore, his claim failed the first element.

Next, as to the Danny Group Case's takings claim, the Court found that Danny Group, Blazian, and Melendez introduced evidence that they possessed a vested property interest in their respective business licenses and that Defendants harassed and intimidated them in an effort to eliminate their businesses for the purpose of purchasing the real property where they were operating.  However, the Court found that Danny Group, Blazian, and Melendez did not hold a vested property interest in the right to conduct their businesses.  The Court held that the assets of a business (including its good will) unquestionably are property, and any state taking of those assets is unquestionably a 'deprivation' under the Fourteenth Amendment.  But business in the sense of the activity of doing business, or the activity of making a profit is not property in the ordinary sense.  See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 675, 119 S. Ct. 2219, 2225, 144 L. Ed. 2d 605 (1999).  Accordingly, the Court granted the Defendants' motion and dismissed the takings claim.

As to the Danny Group Case's due process claims, the Court held that to establish a violation of procedural due process, plaintiffs must show that (1) they had property or a property interest (2) of which the defendant deprived them (3) without due process of law.  See Sunrise Corp. of Myrtle Beach, 420 F.3d at 328.  As previously discussed, the Court found that Danny Group, Blazian, and Melendez do not have a property interest in operating a business.  The Court further held that there was sufficient due process between the suspension and revocation of the business license because there was an appeal process for the revocations.

Equally, the Court held that to show a violation of *substantive due process,* a plaintiff must show (1) that it had property or a property interest; (2) that the state deprived it of this property or property interest; and (3) that the state's action falls so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency. See <u>Tri Cnty. Paving, Inc. v. Ashe Cnty.</u>, 281 F.3d 430, 440 (4th Cir. 2002). The Court concluded that the Danny Group Case Plaintiffs have a property interest in a business license, which the State arguably deprived them of by suspension and revocation of the business licenses. However, the Court found that suspension and revocation were not legally sufficient bases to find for the Danny Group Plaintiffs because those actions did not fall so far beyond the outer limits of legitimate governmental action that no process could cure considering such actions are constitutionally recognized police powers of the State.

In addition, Defendant City of Myrtle Beach also moved for a directed verdict on JB&HM's claims for tortious interference of contract and its Section 1983 causes of action. During oral arguments on the motion, JB&HM withdrew its State law civil conspiracy claim. After reviewing the evidence in the record and drawing all reasonable inferences in favor of JB&HM, the Court granted the Defendant's motion for a directed verdict on the tortious interference of contract claim and took the Section 1983 motion under advisement. As to the tortious interference of contract claim, the Court reiterated the elements for this cause of action, which are: 1) the existence of a contract; 2) knowledge of the contract; 3) intentional procurement of its breach; 4) the absence of justification; and 5) resulting damages. See <u>Sunrise Corp. of Myrtle Beach</u>, 420 F.3d at 322. The Court also stated again that where there is no breach of the contract, there can be no recovery. JB&HM introduced two contracts it had, one with Pure Ultra and the other with

Sawn Lowe and Joseph Lowe ( collectively "Lowe").[4]  The Court found that there was evidence in the record to support the existence of a contract and knowledge of the contract elements but that JB&HM had not offered any evidence to support the fact that Defendant's conduct procured its breach.  Rather, the evidence introduced at trial showed Pura Ultra terminated its lease because its business license was revoked, and Lowe terminated its lease because they did not obtain a permit or approvals for their intended use of the property.

After the Defendants presented their case, they renewed their motion for a directed verdict on Danny Group, Blazian, and Melendez's Section 1985 Civil Conspiracy Claim and JB&HM's 1983 claims.  As to the Section 1985 Civil Conspiracy claim, the Court held that to state a claim under 42 U.S.C. § 1985(3), a plaintiff must prove a conspiracy of two or more persons.  See Simmons v. Poe, 47 F.3d 1370, 1376 (4th Cir. 1995).  However, the Court noted that the intracorporate conspiracy doctrine recognizes that a corporation cannot conspire with itself because the agents' acts are the corporation's own.  See Buschi v. Kirven, 775 F.2d 1240, 1251 (4th Cir. 1985).  Moreover, the Court noted that there are two important exceptions to the doctrine. First, the Court noted it is generally inapplicable where a co-conspirator possesses a personal stake independent of his relationship to the corporation.  See Painters Mill Grille, LLC v. Brown, 716 F.3d 342, 353 (4th Cir. 2013).  Second, the Court noted a plaintiff may state a conspiracy claim where the agent's acts were not authorized by the corporation.  See id.

Defendants argued that there was no conspiracy of two or more persons because all of the alleged individuals are employees or agents of the Defendant City of Myrtle Beach, including the City's manager, John Pederson.  Nevertheless, Plaintiffs contended that they sued Mr. Pederson in

---

[4]      Sawn and Joseph Lowe entered a commercial lease with JB&HM dated October 10, 2018, to lease 803 Main Street, Myrtle Beach, SC  29577, Unit A, to use as a "Bar/Lounge, Restaurant & Entertainment", with an option to purchase units A and B.  The lease contained a special stipulation stating, "[t]his Lease is subject to approval for the intended use by the city of Myrtle Beach."

his individual capacity because his communications and actions, which the record supports, involve a discriminatory racial animus, which was unauthorized and beyond the scope of his role as the City Manager.

However, the Court stated that the Fourth Circuit, in <u>Painters Mill Grille, LLC v. Brown</u>, held that Plaintiffs' argument would "render the intracorporate conspiracy doctrine meaningless" in the context of a § 1985(3) claim "because every claim under that statute depends on a showing that the conspirators shared an inviiously discriminatory motivation." 716 F.3d 342, 352 (4th Cir. 2013). Furthermore, the Court held that the intracorporate conspiracy doctrine "is not avoided simply by showing that corporate employees were motivated in part by personal bias;" rather, the Fourth Circuit in <u>Painter</u> held that the doctrine "probably would not apply where corporate employees are shown to have been motivated *solely* by personal bias…because the interests of the corporation would have played no part in the employees' collective action, so the action could not have been taken within the scope of employment. <u>Id.</u>

The Court concluded that the evidence in the record did not support a basis to find that John Pederson's motivations behind the City acquiring property in the Superblock were based *solely* on racial animus. Instead, the evidence in the record showed that the City of Myrtle Beach provided funding to acquire the property occupied by the Plaintiffs' businesses and that John Pederson as City Manager and as a member of the Myrtle Beach Downtown Redevelopment Corporation ("DRC") was motivated *in part* by increasing public safety in the Superblock and implementing the City's property acquisition plan. Plaintiffs do not dispute that the City of Myrtle Beach adopted a moratorium precluding new bars in the Superblock and that City Council voted to revoke Blazian Promotions and Pure Ultra's business licenses to operate the same in the Superblock. Therefore, the actions of the City's agents, including John Pederson, could not be

based *solely* on racial animus because Plaintiffs could not prove a conspiracy of two or more persons to deprive them of the right to operate their businesses pursuant to lawfully issued business licenses. Accordingly, the Court, after reviewing the evidence in the record, drawing all reasonable inferences in favor of Plaintiffs, the Court granted Defendants' Motion for a Directed Verdict on Plaintiffs' claim for Violation of 42 U.S.C. § 1985(3) – Civil Conspiracy claim.

As to JB&HM's 1983 claims, the Court found that Plaintiff introduced evidence that it had contractual relationships with two third parties: the first pursuant to a letter of intent from a purchaser to purchase its property contingent upon the acquisition of Pure Ultra's business and transfer of its liquor license; and second a lease between JB&HM and Lowe, which was subject to approval for its intended use among other things as a bar and lounge by the City. Equally, the Court found that there was evidence in the record to show that Defendant deprived JB&HM's tenants of their rights to operate businesses that sold liquor, which made it difficult for Plaintiff to sell its property. Nevertheless, JB&HM's section 1983 claim in its complaint alleged that it has a special right contained in the first ten amendments of the U.S. Constitution and that any state action that hinders or terminates those rights requires compensation under the takings clause, the procedural due process clause, and the substantive due process clause. (DE 1-1.)

As to JB&HM's procedural due process claim, the Court held that a jury would not have a legally sufficient evidentiary basis to find a procedural due process violation because there was no evidence in the record to show that the City failed to provide pre or post-deprivation notice or a right to be heard prior to precluding bars and nightclubs in the Superblock. JB&HM's takings claim was based on JB&HM's argument that Defendant deprived it of its "right to operate a business[,]" and made it difficult to sell its property, thus its property right must be compensated

if any "state action . . . impinges, hinders, or terminates those rights . . ." under the first ten

amendments of the U.S. Constitution.  As stated in the Court's previous ruling, JB&HM does not

hold a vested property interest in "the right to conduct business."  See Coll. Sav. Bank, 527 U.S.

at 675, 119 S. Ct. at 2225 ("The assets of a business (including its good will) unquestionably are

property, and any state taking of those assets is unquestionably a "deprivation" . . . .  But business

in the sense of *the activity of doing business,* or *the activity of making a profit* is not property in

the ordinary sense . . . .").[5]  Therefore, the Court granted the City's directed verdict motion because

JB&HM failed to show any evidence of a taking of its property by the City.

        As to JB&HM's substantive due process claim, the Court concluded that to establish a

violation of substantive due process, a plaintiff must show (1) that [it] had property or a property

interest; (2) that the state deprived [it] of this property or property interest; and (3) that the state's

action falls so far beyond the outer limits of legitimate governmental action that no process could

cure the deficiency.  See Tri Cnty. Paving, Inc. v. Ashe Cnty., 281 F.3d at 440.  Although the Court

found that JB&HM introduced evidence to show it lost contracts because the City denied potential

tenants permits and licenses to operate bars and nightclubs in the Superblock, the Court found,

under these facts, that a reasonable jury would not have a legally sufficient evidentiary basis to

find for JB&HM.  Additionally, the Court found that the City's denial of permits or business

licenses to JB&HM's potential tenants was not a legally sufficient basis to find for JB&HM

---

[5]     The Court also held that "Takings" jurisprudence does not divide a single parcel into discrete
segments and attempt to determine whether rights in a particular segment have been entirely abrogated.  In
deciding whether a particular governmental action has effected a taking, this Court focuses rather both on
the character of the action and on the nature and extent of the interference with rights in the parcel as a
whole . . . ."  Penn Cent. Transp. Co. v. City of New York, 438 U.S. 104, 130 (1978).  Accordingly, federal
courts have rejected the proposition that diminution in property value, standing alone, can establish a
"taking."  Id. at 131.  Equally, "takings" challenges have also been held to be without merit . . .  when the
challenged governmental actions prohibited a beneficial use to which individual parcels had previously
been devoted and thus caused substantial individualized harm."  Id. at 125.

because those actions did not fall so far beyond the outer limits of legitimate governmental action that no process could cure considering denial of permits is a permissible police power of local governments.  Furthermore, the Court found that there was nothing in the record indicating that JB&HM or its tenants were denied an opportunity to appeal the denial of the permits, or the suspension or revocation of the licenses.  Therefore, the Court granted the City's motion for a directed verdict.

## LEGAL STANDARD

Federal Rule of Civil Procedure 59(e) provides that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."  While Rule 59(e) does not supply a standard to guide the court's exercise of its power to alter or amend, the Fourth Circuit has recognized that a court may grant a Rule 59(e) motion "only in very narrow circumstances:  (1) to accommodate an intervening change in controlling law, (2) to account for new evidence not available at trial, or (3) to correct a clear error of law or prevent manifest injustice."  Hill v. Braxton, 277 F.3d 701, 708 (4th Cir. 2002).  Rule 59(e) motions may not be used to make arguments that could have been made before the judgment was entered.  See Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998).  Moreover, "[a] party's mere disagreement with the court's ruling does not warrant a Rule 59(e) motion, and such a motion should not be used to rehash arguments previously presented or to submit evidence which should have been previously submitted."  Sams v. Heritage Transp., Inc., 2013 U.S. Dist. LEXIS 116496, 2013 WL 4441949, at *1 (D.S.C. August 15, 2013).  Rule 59(e) provides an "extraordinary remedy that should be used sparingly."  Pac. Ins. Co., 148 F.3d at 403 (internal citation omitted); see also Wright v. Conley, 2013 U.S. Dist. LEXIS 11086, 2013 WL 314749, at *1 (D.S.C. Jan. 28, 2013).

Whether to alter or amend a judgment under Rule 59(e) is within the sound discretion of the district court. See Bogart v. Chapell, 396 F.3d 548, 555 (4th Cir. 2005).

## DISCUSSION[6]

First, as to JB&HM's claims, Plaintiffs contend, "JB&HM's Section 1983 action also requires the court to address whether the City of Myrtle Beach singled out JB&HM (unequal treatment)[,]" relying "upon Village of Willowbrook v. Olech, 528 US 562 (2000) to support [the] Section 1983 claim" in which "the Supreme Court recognized a security against 'intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.'" (DE 142, p. 17.) JB&HM, however, does not address the Court's finding that the City's denial of permits or business licenses to Plaintiff's potential tenants were not actions that fall so far beyond the outer limits of legitimate governmental action that no process could cure because denial of permits is a permissible police power of local

---

[6]    As a preliminary matter, Plaintiffs allege that they "made a motion to amend the pleadings to conform with the evidence at trial." (DE 142, p. 14) (citing Rule 15(b) Fed. R. Civ. P. ("If, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended.")) Plaintiffs claim "[t]his specifically applied to Plaintiffs Monell claim under 42 U.S.C. Section 1983." (Id.) Although Plaintiffs did ask for "the pleadings to be conformed with the evidence," this request was not made because Defendants objected to evidence that was not raised in the pleading. Instead, this request was made during Plaintiffs' response in opposition to Defendants' directed verdict motion on Melendez's tortious interference with a contract claim, which the Court declined to do. Moreover, Plaintiffs never raised or pled a Monell claim as its Motion to Reconsider suggests. See Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998) ("Rule 59(e) motions may not be used to make arguments that could have been made before the judgment was entered."). Rather, Defendants' directed verdict motion was based on the fact that Melendez did not have a contract with JB&HM, but rather Pure Ultra, who was not a party to this action, was the entity that had a contract with JB&HM.

The fact that there was evidence in the record to support a contract with Pure Ultra rather than Melendez did not justify an amendment to the pleadings to add a new party to survive a directed verdict motion. Therefore, the Court declined to do so then. See Rule 16(b)(4) Fed. R. Civ. P., (since the deadline to add parties had expired (DE 4) "[a] schedule may be modified only for good cause and with the judge's consent.") Plaintiffs offered no explanation for making this request after the close of its case. Equally, Plaintiffs have not demonstrated where any of the narrow circumstances for reconsideration exist on this issue; therefore, the Court declines to reconsider an amendment to the pleadings here to include Plaintiff's Monell arguments.

governments. The Court further noted that nothing in the record indicates that Plaintiff or its tenants were denied an opportunity to appeal the denial of the permits or licenses. Therefore, there is no valid basis for the Court to reconsider its Order as to JB&HM.

As to Danny Group, Blazian, and Melendez's claims, Plaintiffs provide a painstaking review of the evidence in the record to purportedly support "the loss of ongoing and daily business revenue that was damaged by the improper and unlawful tactics of the police department; and (2) the unlawful discrimination/selective enforcement of the nuisance law against minority business owners." (DE 142, 18.) However, Plaintiffs again fail to address the Court's ruling on due process or the absence of a Selective Enforcement[7] cause of action by the Plaintiffs. As to procedural due process, the Court found Plaintiffs do not have a property interest in operating a business, and they did not offer any case law in support thereof. Further, there is sufficient due process between the suspension and revocation of the business license because there is an appeal process for the revocation. Accordingly, there is a process to cure any deficiencies. As to substantive due process, the Court found Plaintiffs have a property interest in a business license, which the State arguably deprived them of by suspension and revocation of the business licenses. However, such actions do not fall far beyond the outer limits of legitimate government action, as such actions are a constitutionally recognized police power of the state. Therefore, there is no valid basis for the Court to alter its determination or alter or amend its Order in this regard.

---

[7]     Danny Group, Blazian, and Melendez argue that they suffered disparate treatment from the selective enforcement of the City's nuisance laws or by revoking Blazian and Melendez's business licenses. (DE 142, p. 22.) Although Blazian and Melendez did not appeal their license revocations and Danny Group allowed its license to expire, these plaintiffs did not raise a Selective Enforcement claim or equal protection claim in their complaint. In fact, Plaintiffs conceded that the Danny Group Case and JB&HM Case lawsuits did not include a Fourteenth Amendment cause of action. Plaintiffs' new legal cause of action, which was available before trial, is not an appropriate basis for reconsideration under Rule 59(e).

Lastly, as to Plaintiffs' Intracorporate Conspiracy Doctrine grounds for reconsideration, Plaintiff claims <u>Painters Mill Grille, LLC v. Brown</u>, 716 F.3d 342, 352 (4th Cir. 2013) does not apply here because the "unauthorized acts by agents" exception applies and that <u>Painters Mill Grille, LLC</u> says, "if the only motive was personal bias, the exception would apply." (DE 142, p. 27.) Plaintiffs' argument fails to demonstrate a clear error of law or manifest injustice. First, Plaintiffs misconstrue the Court ruling that denied Defendants' directed verdict motion at the close of Plaintiffs' case by contending the Court ruled "the doctrine [was] not available." (DE 142, p. 24.) To the contrary, the Court found that at that stage, the record showed that Pederson was named individually as a co-conspirator, and Plaintiffs introduced evidence that the City and Pederson targeted minorities for closure. Accordingly, at the close of Plaintiffs case, "a reasonable jury would [] have a legally sufficient evidentiary basis to find for [Plaintiffs] on this issue . . . ." Rule 50(a)(1), Fed. R. Civ. P. However, the Court then concluded, at the close of Defendants case, that the evidence in the record did not support a basis to find that Pederson's motivations behind the City acquiring property in the Superblock were based *solely* on racial animus. See <u>Painters Mill Grille, LLC</u>, 716 F.3d at 352 (The intracorporate conspiracy doctrine "is not avoided simply by showing that corporate employees were motivated in part by personal bias;" rather, the doctrine "probably would not apply where corporate employees are shown to have been motivated *solely* by personal bias…because the interests of the corporation would have played no part in the employees' collective action, so the action could not have been taken within the scope of employment.")

Accordingly, the Court found that the evidence in the record showed that the City of Myrtle Beach provided funding to acquire the property occupied by the Plaintiffs' businesses and that Pederson as City Manager and as a member of the DRC was motivated *in part* by increasing public

safety in the Superblock and implementing the City's property acquisition plan. Plaintiffs do not dispute that the City of Myrtle Beach adopted a moratorium precluding new bars in the Superblock and that City Council voted to revoke Blazian Promotions and Pure Ultra's business licenses to operate the same in the Superblock. Thus, because the actions of the City's agents, including Pederson, could not be based *solely* on racial animus, there was no legally sufficient basis for a jury to find a conspiracy of two or more persons that deprived Plaintiffs of their right to operate their businesses pursuant to lawfully issued business licenses. Therefore, the Court's Order is not a clear error of law nor manifestly unjust, nor has there been a change in controlling law or new evidence to consider since the ruling.

Accordingly, there is no basis to reconsider the Court's prior Order. For these reasons, the Court denies Plaintiffs' motion for reconsideration.

**IT IS SO ORDERED.**

Joseph Dawson, III
United States District Judge

Florence, South Carolina
July 21, 2023

14